O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| BENITO ACOSTA, | ) | CASE NO. SACV 06-0233 DOC (MLGx) |
|---|---|---|
| Plaintiff(s), | ) ) | |
| v. | ) ) | O R D E R GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| CITY OF COSTA MESA, et al., | ) ) | |
| Defendant(s) | ) ) | |
| _____ | ) | |

Before the Court is Defendants' Motion for Summary Judgment.  After considering the moving, opposing and replying papers, as well as the parties' oral argument, and for the reasons that follow, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' Motion.

I.    BACKGROUND

On January 3, 2006, Plaintiff, Benito Acosta ("Acosta") took the podium at a Costa Mesa City Council meeting to challenge a proposal by Defendant, Mayor Allan Mansoor ("Mansoor") that would allow Costa Mesa Police to enforce federal immigration laws.

The Mayor's proposal, which sought to make Costa Mesa the first city to have police enforce federal immigration laws, was passed by a three to two vote in the City Council at the Council's December 6, 2005 meeting.  At that meeting Acosta had publicly called Mayor

Mansoor a "fucking racist pig," based on his proposal as well as his prior efforts to close a job center and close the city's Human Relations Commission.

The proposal was subject to intense public debate. In fact, a number of government officials, including Defendant, Chief of Police John Hensley ("Hensley") opposed the proposal.

Accordingly, the January 3, 2006 City Council meeting drew a larger-than-usual crowd, far exceeding the 256-person capacity of the City Council chambers. Crowds demonstrated in front of the chambers both in favor and against the Mayor's proposal. Among them was Acosta's group, the Colectivo Tonantzin, demonstrating against the proposal, and the Minuteman Project, demonstrating in favor of the proposal. Although Minuteman Project members were shouting at opponents of the proposal, the opponents remained peaceful.

During the meeting, speakers on both sides of the issue were allotted three minutes to speak. Additionally, based on a number of city ordinances, they were required to observe the rules of decorum of the City Council. Mayor Mansoor, acting as moderator, advised people in the audience that anyone who disrupted the proceeding would be asked to leave.

One of the earliest speakers in favor of the proposal was Jim Gilchrist, co-founder of the Minuteman Project. He took the podium at 6:07 p.m. He praised the proposal and, early in his speech, stated that he would ask members of the Minuteman Project in the audience to stand up rather than applaud and make noise. He then asked them to stand up. People in the audience began to stand, and then sat back down. At the same time, Mayor Mansoor stated, "[a]ctually, if we could – thank you, I'd appreciate that." Gilchrist then went on to praise the Mayor and his proposal.

A total of 15 speakers in support of the proposal and 10 against addressed the City Council before Acosta took the podium. Each of these speakers made it through the allotted three minutes without event.

At 6:56 p.m. Acosta took the podium. He introduced himself and his group. About halfway through his three-minute allotment, he began to criticize the Mayor's motives in making the proposal, claiming that he knew of the Mayor's plot to gentrify the City. He stated that he would not let this happen, and that his group would act to stop the proposal. At about two

minutes and twenty seconds into his speech, Acosta asked anyone who agreed with what he was saying to "please stand up."

Mayor Mansoor interrupted, saying "No, I'm not going to do that." Acosta continued to encourage members of the audience to stand, shouting "Do it!" Mansoor then told Acosta that he would no longer be permitted to speak and called a recess. He further stated that the public hearing portion of the meeting was commencing. At this point, Acosta was entitled to approximately 30 additional seconds.

Acosta refused to leave the podium. A group of three to four police officers approached and surrounded him. Sergeant Glass and Officer Guth approached Acosta first and asked him to leave the podium. He refused and began to argue with them. Lieutenant Andersen then approached the podium and asked Acosta to leave. When Acosta refused, two officers ordered him to leave. Sergeant Glass then took hold of Acosta's right elbow and attempted to usher him away from the podium. After police gave him permission, Acosta turned and grabbed his speech from the podium. He then began arguing with officers, telling them not to touch him, and pointing towards the doorway.

At this time, members of the audience began standing and shouting at the police.

Chief Hensley then approached the officers and told them to remove Acosta from the chambers. Lieutenant Anderson placed Acosta's torso in a control hold. Sergeant Glass put Acosta's right arm in a control hold. Officer Guth took hold of Acosta's right arm. They then removed him from the chambers.

At this time Acosta was failing to comply with officers' attempts to remove him. He was swinging his arms, kicking his legs, planting his feet, etc. The crowd in the chambers also grew more boisterous, yelling and moving closer towards the officers. Acosta can be seen on video attempting to plant his feet inside the door frame of the chambers.

After removing Acosta from the chambers, officers were confronted with the crowds of protestors outside. One group of protestors ran towards the officers and at least one protestor threw something. Accordingly, the officers decided to move Acosta into nearby City Hall. Video evidence shows that officers had control of Acosta's neck. It also shows Acosta

1  attempting to prevent officers from moving into City Hall by wrapping his feet around a

2  handrail.

3       Once at the top of the City Hall steps, Sergeant Glass decided to arrest Acosta for

4  obstructing and resisting arrest.  He then attempted, unsuccessfully, to place handcuffs on

5  Acosta.  Officer Guth then fell to the ground with Acosta. Officers Dehuff and Doezie grabbed

6  Acosta and began pulling him into City Hall.  Once inside City Hall, officers eventually

7  handcuffed Acosta and transported him away from the scene.

8       Acosta was charged with misdemeanor violations Costa Mesa Municipal Code §§ 2-61

9  and 2-64, and California Penal § 148(a).  Section 2-61 provides:

10      (a)   The presiding officer at a meeting may in his or her discretion bar from further

11         audience before the council, or have removed from the council chambers, any person who

12         commits disorderly, insolent, or disruptive behavior, including but not limited to, the

13         actions set forth in (b) below.

14      (b)   It shall be unlawful for any person while addressing the council at a council meeting

15         to violate any of the following rules after being called to order and warned to desist from

16         such conduct:

17         (1)   No person shall make any personal, impertinent, profane, insolent, or

18           slanderous remarks.

19         (2)   No person shall yell at the council in a loud, disturbing voice.

20         (3)   No person shall speak without being recognized by the presiding officer.

21         (4)   No person shall continue to speak after being told by the presiding officer that

22           his allotted time for addressing the council has expired.

23         (5)   Every person shall comply with and obey the lawful orders or directives of the

24           presiding officer.

25         (6)   No person shall, by disorderly, insolent, or disturbing action, speech, or

26           otherwise, substantially delay, interrupt, or disturb the proceedings of the council.

27  Section 2-64 provides:

28      It shall be unlawful for any person in the audience at a council meeting to do any of the

following after being called to order and warned to desist from such conduct:

> (1)   Engage in disorderly, disruptive, disturbing, delaying or boisterous conduct, such as, but not limited to, handclapping, stomping of feet, whistling, making noise, use of profane language or obscene gestures, yelling or similar demonstrations, which conduct substantially interrupts, delays, or disturbs the peace and good order of the proceedings of the council.
>
> (2)   Refuse to comply with a lawful order or directive of the presiding officer of the council.

The sergeant-at-arms shall have the authority to remove any such person from the council chamber and place him or her under arrest, or both.

Penal Code § 148(a) makes it a misdemeanor to "willfully resist[], delay[], or obstruct[] any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment. . .."   Rather than ticket Acosta and release him from custody, Officer Makiyama decided to detain Acosta to prevent him from returning to the scene.  Lieutenant Epperson approved this decision.  Acosta was released approximately five hours later.

Acosta raises a number of State and Federal Constitutional challenges to the actions of the Mayor and the various police officers.  Defendants brought a Motion for Summary Judgment as to each of his claims.

## II.   LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it

1  need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256,

2  106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986).

3  When the non-moving party bears the burden of proving the claim or defense, the moving party

4  can meet its burden by pointing out that the non-moving party has failed to present any genuine

5  issue of material fact.  *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

6      Once the moving party meets its burden, the "adverse party may not rest upon the mere

7  allegations or denials of the adverse party's pleading, but the adverse party's response, by

8  affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

9  a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if

10  appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e); *see also*

11  *Anderson,* 477 U.S. at 248-49.  Furthermore, a party cannot create a genuine issue of material

12  fact simply by making assertions in its legal papers.  There must be specific, admissible evidence

13  identifying the basis for the dispute.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter*

14  *Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).  The Supreme Court has held that "[t]he

15  mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on

16  which the jury could reasonably find for [the opposing party]."  *Anderson*, 477 U.S. at 252.

17  **III.   DISCUSSION**

18      Acosta raises, and Defendants challenge, the following claims: a) Violation of the First

19  Amendment; b) Violation of state law rights to free speech; c) Declaratory relief; d) Violation of

20  the Fourth Amendment; e) Violation of the Equal Protection Clause; f) Violation of procedural

21  due process; g) Violation of California Civil Code § 52.1; h) Violation of California Civil Code

22  § 51.7; i) False arrest; j) Intentional infliction of emotional distress; k) Battery; and l)

23  Negligence.  The Court considers each claim individually.

24      **A.   First Amendment Claim**

25          **1.   Constitutional Violation**

26      Acosta agrees to dismiss his First Amendment claim against Officers Doezie, Tobin, and

27  Trusk.  Thus, Summary Judgment is appropriate in favor of these defendants.  Because they

28  were not directly involved in preventing Acosta from addressing the City Council, they cannot

be liable for violating Acosta's First Amendment rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation.") (citations omitted).  The Court previously dismissed his First Amendment claim against Officer Makiyama.

With respect to Mayor Mansoor, Chief Hensley, Sergeant Andersen, Lieutenant Glass and Officer Guth, Acosta claims that these defendants violated his First Amendment rights by preventing him from addressing the City Council after he asked audience members to stand and removing him from the chambers so he could no longer address the Council.

Acosta's speech, on a pending proposal in the City Council, was political speech at the core of the First Amendment protection.  *Boos v. Barry*, 485 U.S. 312, 318, 108 S. Ct. 1157 (1988); *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1008 (9th Cir. 2003) (citing *Boos*).  "[T]here is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs."  *Mills v. Alabama*, 384 U.S. 214, 218, 86 S. Ct. 1434 (1966).  Indeed, California law requires city councils to hold open meetings.  *See* Cal. Gov't Code § 54953 (a) ("All meetings of the legislative body of a local agency shall be open and public"); Cal. Gov't Code § 54954.3 (a) ("Every agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public.")  Further, the Constitution expressly recognizes the right of the people to petition for redress of grievances.  *See* U.S. Const. Amend. I ("Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."); *cf. David v. Baker*, 129 Fed. Appx. 358, 360-61 (9th Cir. 2005) (discussing right to petition for redress of grievances with respect to city council).  Thus, Acosta's interest in addressing the City Council cannot be overstated. *White v. City of Norwalk*, 900 F. 2d 1421, 1425 (9th Cir. 1990) ("Citizens have an enormous first amendment interest in directing speech about public issues to those who govern their city.")

On the other hand, the City also has an interest in controlling City Council meetings, and can even control the content of citizen comment in these meetings.  *Id.* ("Public forum or not, the

1   usual first amendment antipathy to content-oriented control of speech cannot be imported into

2   the Council chambers intact."); *See Cornelius v. NAACP Legal Defense and Ed. Fund, Inc.*, 473

3   U.S. 788, 802, 105 S. Ct. 3439 (1985) ("a public forum may be created by government

4   designation of a place or channel of communication for use by the public at large for assembly

5   and speech, for use by certain speakers, or for the discussion of certain subjects." (citation

6   omitted)).  Although the Ninth Circuit has never explicitly defined City Council meetings as

7   non-public fora, it has indicated that moderators (here Mansoor) have broad discretion to control

8   the meetings:

9          It seems to us that the highly structured nature of city council and

10         city board meetings makes them fit more neatly into the nonpublic

11         forum niche. But, as we intimated in *City of Norwalk*, the important

12         thing is not whether we call the meetings highly regulated limited

13         public fora or nonpublic fora.  The fact remains that limitations on

14         speech at those meetings must be **reasonable** and **viewpoint**

15         **neutral**, but that is all they need to be.

16  *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995) (emphasis added).

17  In other words, Mansoor's decision to prevent Acosta from speaking, and the decision to have

18  him removed, are constitutionally permissible so long as they are (1) "reasonable in light of the

19  purpose served by the forum," and (2) "viewpoint neutral."  *Cornelius*, 473 U.S. at 806.

20         In determining whether the restriction of Acosta's speech was reasonable, the Court must

21  apply a more searching inquiry than simple rational basis review.  *Sammartano v. First Judicial*

22  *Dist. Court*, 303 F.3d 959, 966-68 (9th Cir. 2002).  "There must be evidence that the restriction

23  reasonably fulfills a legitimate need."  *Id.* at 967.  The restriction must also be reasonable "in

24  light of the purpose served by the forum."  *Cornelius*, 473 U.S. at 806.  The purpose served by

25  the City Council meetings is, at least in part, to allow citizen comment on pending proposals.

26  *See Chaffee v. San Francisco Library Comm'n*, 115 Cal. App. 4th 461, 469 (2004) (purpose of

27  provisions requiring open meetings is "to ensure the public's right to attend public agency

28  meetings to facilitate public participation in all phases of local government decisionmaking . .

.").

Genuine issues of material fact exist as to whether preventing Acosta from continuing to address the Council was a reasonable regulation of speech.

First, it is not clear that Mansoor's decision to cut Acosta off was proper under the Costa Mesa Municipal Code sections that Acosta is accused of violating.  Mere failure to comply with a rule governing city council meetings does not *per se* amount to a constitutional violation.  *See White*, *supra*..  But, when a policymaker prevents speech under authority granted by a city ordinance, reasonableness minimally requires that he comply with that ordinance in exercising this authority.

It is also unclear whether Acosta actually violated the Costa Mesa Municipal Code in the first instance.  Section 2-61 (a) permits the Mayor "in his discretion" to bar an individual for "disorderly, insolent, or disruptive behavior."  The next subsection, 2-61(b) includes an illustrative list of such behavior: personal insults or profane language; shouting; speaking out of turn; continuing to speak after one's time has expired; disobeying the lawful orders of the Mayor; or other disorderly, insolent or disruptive behavior that will "substantially delay, interrupt, or disturb the proceedings of the council."  Asking audience members to stand is not an enumerated behavior.  Further, Mansoor did not advise audience members to remain seated during his admonition at the beginning of the meeting.  Mansoor did not wait until an actual disturbance occurred before calling a recess and preventing Acosta from continuing his speech.  Although Mansoor was not required to wait until audience members erupted into a full scale riot before calling the meeting to a halt, he had to do more than simply call a recess after Acosta made his requests of audience members.  *See Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 508, 89 S. Ct. 733 (1969) ("undifferentiated fear or apprehension of disturbance" is insufficient to curtail speech).  Finally, Section 2-61 (b) makes it unlawful to engage in disruptive behavior  "after being called to order and warned to desist from such conduct."  Minimally a genuine issue of material fact exists as to whether Mansoor's statement "[n]o, I'm not going to do that," was sufficient to constitute a "call to order" and "warning to desist."   Indeed, rather than call Acosta to order in as many words, Mansoor decided to recess

1   the meeting without allowing Acosta to finish his speech.

2        An implicit custom of not permitting audience members to stand could be a sufficient

3   basis to silence Acosta. *See In re Kay*, 1 Cal. 3d 930, 941 (1970) (interpreting state analog as

4   requiring "that the defendant substantially impaired the conduct of the meeting by intentionally

5   committing acts in violation of implicit customs or usages or of explicit rules for governance of

6   the meeting, of which he knew, or as a reasonable man should have known.")  However, there is

7   a genuine issue of fact as to whether such custom existed and whether Acosta was aware of the

8   custom.

9        Section 2-64 prohibits "disorderliness by members of the audience" at a city council

10  meeting.  Acosta was not a member of the audience.  However, it may have been permissible for

11  Mansoor to silence him if he were encouraging audience members to violate this section.  It is

12  not clear that Acosta was doing so.  Section 2-64 prohibits audience members from engaging in

13  an illustrative list of disorderly behaviors, engaging in conduct which "substantially interrupts,

14  delays, or disturbs the peace and good order of the proceedings of the council," or failing to

15  follow the lawful orders of the Mayor.  Notably absent from the list of behaviors is "standing in

16  support of a speaker."

17       Based on the potential that Mansoor failed even to follow the ordinances he claims

18  Acosta was violating, there is a genuine issue of material fact as to whether his conduct was

19  "reasonable in light of the purposes" of the meeting.  Thus, Summary Judgment is inappropriate.

20       Further, Acosta raises a genuine issue of material fact as to whether Mansoor's conduct

21  was viewpoint neutral.

22       Acosta points to what he perceives as disparate treatment from Jim Gilchrist.  *See*

23  *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 980 (9th Cir. 1998) (where a neutral

24  regulation is a facade for viewpoint discrimination, it is unconstitutional) (citing *Grossbaum v.*

25  *Indianapolis Marion County Bldg. Auth.*, 100 F.3d 1287, 1298 (7th Cir. 1996)).  Gilchrist's

26  speech was not interrupted.  Instead, Mansoor simply said "[a]ctually, if we could  –  thank you,

27  I'd appreciate that," and allowed Gilchrist to continue speaking after the audience members took

28  their seats.  In contrast, Mansoor reacted immediately to Acosta, stating "No, I'm not going to do

10

this." When Acosta continued urging audience members to stand, Mansoor recessed the meeting.

The important inquiry in this case is motive.  Mansoor contends that the disparate treatment was the result of his being confused by Gilchrist's request and the fact that Gilchrist's supporters immediately sat down after standing.  Defendants point out that Acosta continued to encourage audience members to stand despite Mansoor's statements.  However, Acosta points out that Gilchrist praised Mansoor and his proposal, and that Acosta challenged Mansoor's motives and previously called him a racist.

Although this is not a Title VII case, cases in that field are instructive on the issue of motive: where there is a legitimate dispute as to an actor's motive, summary judgment is inappropriate and the question should go to the jury.  *See Sischo-Nownejad v. Merced Comm. College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991).

Defendants claim that Mansoor's actions could not have been viewpoint based because a number of people spoke out against the proposal without event and because Chief Hensley opposed the proposal himself.  However, as the Supreme Court noted in *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 831, 115 S. Ct. 2510, not all debate is bipolar.  The fact that Mansoor did not prohibit every dissenter from expressing his or her views does not mean that he did not prohibit Acosta from doing so.  After all, Acosta was unique in twice challenging the Mayor's motives in making the proposal.

Accordingly, a genuine issue of material fact exists as to whether Mansoor's decision to prevent Acosta from speaking was viewpoint based.  Thus, summary judgment on this claim is inappropriate.  Further, because the officer defendants removed Acosta from the chambers as a result of his questioning why he was being silenced and removed from the podium, they also participated in the constitutional violation.  *See Jones*, *supra*.

### 2.    Qualified Immunity

Qualified immunity analysis involves two steps: first, the court must determine whether defendants violated plaintiff's constitutional rights; second, if the court finds a violation, it must determine whether the violated right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 202

(2001).  A right is clearly established where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)).  "The doctrine of qualified immunity safeguards 'all but the plainly incompetent or those who knowingly violate the law.... [If] officers of reasonable competence could disagree on th[e] issue [of whether a chosen course of action is constitutional], immunity should be recognized.'" *Lytle v. Wondrash*, 182 F.3d 1083, 1086-87 (9th Cir. 1999) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)).

Acosta has raised a triable issue of fact as to whether his constitutional rights were violated when he was silenced and removed from the City Council chambers.

If Mansoor's decision was unreasonable for purposes of First Amendment analysis, it cannot be reasonable for purposes of qualified immunity.  Further, if Mansoor's decision was viewpoint-based, this fact was known to him at the time he made the decision.  This too precludes qualified immunity.  In other words, Mansoor could not have discriminated against Acosta and, at the same time, reasonably believed that he was not discriminating.

However, Chief Hensley and the other police officers on the scene could well have believed that Mansoor's decision to cut Acosta off was reasonable and based on permissible considerations.  Accordingly, they are entitled to qualified immunity.

Even though genuine issues of fact exist as to whether Mansoor acted reasonably in silencing Acosta, Acosta's right to continue speaking in the meeting was not so clearly defined as to deny the officers qualified immunity.  An officer can only be denied qualified immunity if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).  Although Acosta's general right to freedom of speech is clear, the right at issue cannot be assessed at this level of generality. *Id.* at 639-40.  Instead, the right must be considered in the specific context of the individual case. *Saucier*, 533 U.S. at 201.  The court must ask whether, "in the light of pre-existing law the unlawfulness [of the officers' actions was] apparent." *Anderson*, 483 U.S. at 640 (citations omitted).  The Ninth Circuit has previously upheld restrictions on speech in city council meetings. *See White*, *supra.*, *Kindt v. Santa Monic*

1   *Rent Control Board*, 67 F.3d 266 (9th Cir. 1995).  The municipal code sections governing

2   disruptive conduct are not entirely clear.  Additionally, Acosta has not identified even a similar

3   case to demonstrate that the officers' conduct was unlawful.  Accordingly, the right cannot be

4   said to be "clearly established."

5        Further, the Costa Mesa Municipal Code expressly charges the police officers at a city

6   council meeting to remove individuals violating section 2-64 or otherwise causing disruption or

7   failing to comply with the orders of the moderator.  Section 2-66 provides:

8         The chief of police or such members of the police department as he

9         may designate shall attend each council meeting and shall be

10        sergeant-at-arms of the city council. The sergeant-at-arms shall carry

11        out all lawful orders given by the presiding officer for the purpose of

12        maintaining order at the council meetings. The sergeant-at-arms shall

13        have the authority and power to enforce the orders of the presiding

14        officer relating to the order and conduct at council meetings and to

15        arrest any person violating the provisions of this chapter.

16   Given this clear directive to enforce the orders of the Mayor, a reasonable police officer on the

17   scene could well have believed that it was proper for him or her to remove Acosta when Acosta

18   failed to give up the podium after Mansoor ordered the recess.

19        Finally, there is a significant question of whether Mansoor acted reasonably in silencing

20   Acosta and calling a recess.  Thus, even if the officers were mistaken about the constitutionality

21   of removing Acosta, this good-faith mistake does not preclude qualified immunity.  Indeed, a

22   reasonable officer could have made the same mistake.  *See Saucier*, 533 U.S. at 205 ("If the

23   officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the

24   immunity defense.")

25        Acosta is correct that the right to verbally challenge police officers has been deemed

26   clearly established by the Ninth Circuit. *MacKinney v. Nielson*, 69 F.3d 1002, 1007 (9th Cir.

27   1995) ("Ninth Circuit law . . . clearly establishes the right verbally to challenge the police.").

28   However, he was removed from the podium after Mansoor stated that his time was over and

1  called the meeting into recess.  There is no evidence that the officers removed Acosta because he

2  was verbally challenging them.  Instead, the evidence shows that they removed him following

3  Mansoor's directive that the meeting was in recess and Acosta's failure to relinquish the podium.

4  Accordingly, his right to verbally challenge police officers, while clearly established, was not

5  implicated.

6       Accordingly, the police officer defendants are entitled to qualified immunity on Acosta's

7  First Amendment claim, but Mayor Mansoor is not.

### 3.       Municipal Liability

9       There is no such thing as *respondeat superior* liability under 42 U.S.C. § 1983.  *Monell v.*

10  *Dep't of Soc. Servs.*, 436 U.S. 658, 693, 98 S. Ct. 2018 (1978).  However, a municipality can be

11  liable if a municipal officer with policymaking authority authorizes the constitutional violation.

12  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427 (1985).  The parties

13  agree that Mansoor, the Mayor, has policymaking authority.  The City can be liable if Mansoor

14  is liable.

15       Accordingly, Summary Judgment is not appropriate as to the City.

### 4.       Conclusion

17       Accordingly, Summary Judgment on Acosta's First Amendment claim is hereby

18  GRANTED as to all of the police officer defendants, including Chief Hensley, and DENIED as

19  to Mayor Mansoor and the City.

### B.       State Free Speech Claim

21       The Court previously ruled on Acosta's state-law free speech claim finding: a) that he had

22  failed to state a claim against individual officers, and b) that damages were not available under

23  this claim.  Acosta did not move to reconsider these points, and merely attempts to reargue them

24  in his Opposition to the Defendants' Motion for Summary Judgment.  The Court declines to

25  reconsider those points.

26       Accordingly, Summary Judgment is appropriate on Acosta's state-law free speech claim

27  as to the officer defendants, and to the extent it seeks damages.  This leaves only a claim as to

28  Mansoor, Hensley and the City.

1   Mansoor and Hensley are immune under California Government Code § 820.2, which

2   provides:

> 3   Except as otherwise provided by statute, a public employee is not
>
> 4   liable for an injury resulting from his act or omission where the act
>
> 5   or omission was the result of the exercise of the discretion vested in
>
> 6   him, whether or not such discretion be abused.

7   Mansoor is expressly given discretion to bar an individual from participating in city council

8   meetings under Costa Mesa Municipal Code § 2-61(a).  Further, with respect his First

9   Amendment claim against Mansoor, Acosta contends that Mansoor acted as a policymaker in

10  silencing him.  Thus, Acosta's argument based on *Barner v. Leeds*, 24 Cal. 4th 676, 684 (2000),

11  that the act of silencing him was "operational" and "ministerial" versus a discretionary,

12  policymaking act is unpersuasive.  Hensley, as Chief of Police, also exercised discretion in

13  directing officers to remove Acosta.

14   To the extent that Mansoor, Hensley, and the police officers are immune, the City is also

15  immune.  *See Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1435 (1988) ("Though

16  section[ ] 820.2 expressly immunize only the employee, if the employee is immune, so too is the

17  [City.]")

18   Thus, Summary Judgment is hereby GRANTED as to Acosta's state-law free speech

19  claim.

20   **C.   Declaratory Relief**

21   Defendants argue that, because Sections 2-61 and 2-64 of the Costa Mesa Municipal

22  Code were constitutionally applied, they are entitled to Summary Judgment on Acosta's claim

23  for declaratory relief.  However, because genuine issues of material fact exist as to the

24  constitutionality of the Mayor's application of these sections, Summary Judgment is

25  inappropriate on Acosta's claim for declaratory relief.

26   Accordingly, Summary Judgment on this claim is hereby DENIED.

27

28   **D.   Fourth Amendment**

1   Acosta contends that Defendants violated his Fourth Amendment rights by arresting him

2   without probable cause and by using excessive force against him in doing so.

3             **1.**       **Arrest without Probable Cause**

4   As an initial matter, Acosta does not claim that Mayor Mansoor or Officers Tobin, Trusk

5   or Makiyama took part in arresting him.  Accordingly, Summary Judgment against them is

6   proper on Acosta's claim that he was arrested without probable cause.  *See Jones*, *supra*.

7   An officer is permitted to arrest an individual, without a warrant, if he or she has probable

8   cause to suspect that the individual has committed or is committing a crime.  *Michigan v.*

9   *DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627 (1979) (citations omitted).  Probable cause "means

10  facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent

11  person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect

12  has committed, is committing, or is about to commit an offense." *Id.* (citations omitted).  It is

13  undisputed that Costa Mesa Municipal Code § 1-33 makes it a misdemeanor to violate other

14  sections of the Municipal Code, including Sections 2-61 and 2-64.  Further, California Penal

15  Code § 148(a)(1) makes it a misdemeanor to "willfully resist[], delay[], or obstruct any public

16  officer . . . in the discharge or attempt to discharge any duty of his or her office or employment .

17  . .." Accordingly, Acosta's arrest did not violate the Fourth Amendment if officers had probable

18  cause to believe that he violated Section 2-61 or that he was obstructing justice.

19  As indicated above, it was reasonable for officers to believe that Acosta had violated the

20  Section 2-61 and attempted to incite a violation of 2-64.  After all, pursuant to Section 2-66, the

21  officers were on site to enforce the lawful orders of the Mayor.  Section 2-61(b)(5) expressly

22  requires "[e]very person [to] comply with and obey the lawful orders or directives of the

23  presiding officer."  When Mayor Mansoor stated that the meeting was in recess, and that the they

24  would resume with the public hearing portion of the meeting, a reasonable officer could have

25  concluded that the Mayor was directing Acosta to step down from the podium.  However,

26  Acosta failed to do so, thus failing to comply with the lawful directives of the Mayor.

27  Accordingly, officers had probable cause to arrest Acosta for violating Section 2-61.  Further

28  Section 2-66 expressly gives the Chief of Police the authority to arrest individuals for violating

1   Section 2-61, even without an express directive from the Mayor.  Although a question exists as

2   to whether Acosta violated that provision by asking audience members to stand, a reasonable

3   officer on the scene could have concluded as much.  Moreover, Section 2-64 prevents audience

4   members from disrupting the proceedings, the officers could have reasonably believed that

5   Acosta had attempted to incite a violation of this section by asking audience members to stand.

6   Finally, Acosta was ordered to step down from the podium by two officers, but failed to do so.

7   He further refused to leave the chambers when ordered to do so by officers.  Accordingly, a

8   reasonable officer could have concluded that he was obstructing per Penal Code § 148.

9          Acosta points out that the California Supreme Court limited the state analog to Section 2-

10   61 to prevent it from being unconstitutional.  *See In re Kay*, *supra*.  In doing so, the court

11   required the speaker's actions to "substantially impair[ ] the conduct of the meeting."  However,

12   the question is not whether the municipal code provisions at issue were constitutionally applied

13   to Acosta, but whether a reasonable officer on the scene would conclude that Acosta violated

14   those provisions.  For the reasons above, a reasonable officer would so conclude.  Accordingly,

15   the question of whether there was a "substantial impairment" of the meeting is irrelevant.

16          Accordingly, officers did have probable cause to arrest Acosta.

17          Further, where it was reasonable for officers to believe that they have probable cause to

18   make an arrest, even if they do not, they are entitled to qualified immunity.  *Hunter v. Bryant*,

19   502 U.S. 224, 227-228, 112 S. Ct. 534 (1991).  Whether a reasonable officer would believe that

20   he or she had probable cause is a question of law, which "ordinarily should be decided by the

21   court long before trial."  *Id.* at 228 (citation omitted).  In *Act Up! / Portland v. Bagley*, 988 F. 2d

22   868 (9th Cir. 1993), the Ninth Circuit stated the following regarding qualified immunity on the

23   issue of probable cause:

24          We interpret *Hunter* to hold that the question of whether a

25          reasonable officer could have believed probable cause (or reasonable

26          suspicion) existed to justify a search or an arrest is 'an essentially

27          legal question,' that should be determined by the district court at the

28          earliest possible point in the litigation.

17

1   *Id.* at 873.

2         The Court believes that the officers had probable cause.  However, if they did not have

3   probable cause, such a mistake was minimally reasonable.  Accordingly, they are entitled to

4   qualified immunity to the extent that they lacked actual probable cause.

5         **2.**     **Excessive Force**

6         "Officers may only use such force as is 'objectively reasonable' under the

7   circumstances." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (quoting

8   *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865 (1989)).  To assess the reasonableness

9   of an officer's actions, "courts balance 'the nature and quality of the intrusion on the individual's

10   Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.*

11   "The 'reasonableness' of a particular use of force must be judged from the perspective of a

12   reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490

13   U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S. Ct. 1868 (1968)).  Courts typically

14   consider the following factors in assessing the reasonableness of force: a) the severity of the

15   crime at issue; b) whether the suspect poses a threat to officers or others; and c) whether the

16   suspect actively resists detention or tries to escape. *Liston v. County of Riverside*, 120 F.3d 965,

17   976 (9th Cir. 1997).  Reasonableness of force applied is typically a question for the jury. *Id.* at

18   976 n.10 ("We have held repeatedly that the reasonableness of force used is ordinarily a question

19   of fact for the jury." (collecting cases)); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("we

20   have held on many occasions that summary judgment or judgment as a matter of law in

21   excessive force cases should be granted sparingly.")     However, where the facts, taken in the

22   light most favorable to the plaintiff, show that officers acted reasonably, summary judgment is

23   appropriate. *Liston*, 120 F.3d at 976 n.10; *Jackson*, 268 F.3d at 651 n.1.

24         On one hand, Acosta's purported crime was not severe.  He was charged with disrupting

25   the city council meeting and obstructing justice.  Each of these is a misdemeanor, and none

26   threaten a breach of the peace or harm.

27         However, both of the other factors identified above support the officers use of force in

28   arresting Acosta.  Although Acosta himself was outnumbered by the four officers that removed

him from the chambers and the additional officers that took him into City Hall and ultimately arrested him, the officers were outnumbered both by the number of individuals inside the chambers and outside.  While Acosta was being taken out of the chambers, a number of people in the audience made noise and began approaching the officers.

Rather than comply with officers directives, Acosta admittedly stopped to grab his speech, and demanded to know why he was being removed or prevented from speaking.  The video evidence submitted by Acosta shows that he was not complying with officer's directives inside the City Council chambers.  Further, uncontroverted evidence shows that Acosta attempted to plant his feet inside the chambers.

Once outside, Acosta continued to resist while officers attempted to drag him through a crowd of demonstrators.  Acosta does not dispute that he failed to comply with officers' orders and resisted as they attempted to drag him into City Hall.  He is documented on video wrapping his feet around a handrail, and Officer Guth fell to the ground attempting to get Acosta into City Hall.

The undisputed evidence shows that the demonstrators were composed of two opposed groups.  Further, Acosta admits that the Minutman Project, one such group, had a "knack" for causing animosity among demonstrators.  The undisputed evidence further shows that a group of protestors ran up to the police and at least one protestor threw things in their direction.  Just as in *Jackson*, *supra*, the fact that officers were surrounded by a group of protestors raises safety concerns not present in cases dealing with individual suspects.  In light of this incendiary situation, the officers could have reasonably concluded that they had to use some level of force to control Acosta.  *See Jackson*, *supra*.

The degree of force used to move and arrest Acosta appears minimal.  Acosta merely claims that Lieutenant Andersen "grabbed [him] around the neck" and that other officers engaged in "grabbing, pushing, kicking and dragging him" out of the City Council chambers. He does contend that he was permanently or severely injured.

On balance, the amount of force used to detain Acosta appears plainly reasonable, and Summary Judgment on this claim is appropriate.

Acosta's final claim is that Officer Makiyama unlawfully prolonged his detention by declining to ticket and release him.  California Penal Code § 853.6 (a) requires that a person arrested for a misdemeanor be released.   However, Section 853.6 (i) provides an exception to this requirement where, *inter alia*, "[t]here [is] a reasonable likelihood that the offense or offenses would continue or resume . . .."  As noted above, officers had probable cause to believe that Acosta violated Costa Mesa Municipal Code § 2-61 and 2-64 by asking members of the audience to stand and failing to comply with Mansoor's orders.  Further, Acosta had previously called Mansoor a "fucking racist pig" in a City Council meeting, another potential violation of Section 2-61.  A reasonable officer in Makiyama's position would have believed that Acosta would return to the meeting if released and likely violate § 2-61 again.  Accordingly, the decision to detain him under Section 853.6(i) was proper.

### 3.    Conclusion

Summary Judgment on Acosta's Fourth Amendment claim is hereby GRANTED.

### E.    Equal Protection Claims

An equal protection violation occurs where "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Acosta provides evidence that he is a member of a protected class, indeed several protected classes.  He further provides the same evidence, identified above, that he was treated differently than Jim Gilchrist at the January 3, 2006 City Council meeting.  He has presented no evidence to establish a link between his protected status and this disparate treatment – i.e. evidence of motive.  He is certainly correct that motive is an issue best left to the jury, but only where there is some evidence for the jury to consider.  Having submitted none, Acosta is not entitled to a jury trial on his equal protection claims.

Thus, Summary Judgment is hereby GRANTED as to Acosta's Equal Protection claims.

### F.    Due Process Claims

Under the Federal Due process clause, an individual has a cause of action if he is deprived of an interest without due process of law.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 532 (1985).  An individual may have a protectable interest arising from

1    state law.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701 (1972)

2    ("they are created and their dimensions are defined by existing rules or understandings that stem

3    from an independent source such as state law."); *Meachum v. Fano*, 427 U.S. 215, 226, 96 S. Ct.

4    2532 (1976) (state created interest in good-time credit entitled to due process protection).  If he

5    has such an interest, the state must provide due process before depriving him of the interest.

6        To create such an interest, the state law must "set forth 'substantive predicates to govern

7    official decision making' and . . . contain 'explicitly mandatory language,' *i.e.*, a specific

8    directive to the decisionmaker that mandates a particular outcome if the substantive predicates

9    have been met."  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 (9th Cir. 2002).  Here, California

10   expressly provides that City Council Meetings must be open to the public.  *See* Cal. Gov't Code

11   §§ 54953, 54954.3.  This affirmative requirement creates at least some interest in being allowed

12   to speak at the meetings.  Further, Mansoor gave each speaker at the January 3, 2006 meeting

13   three minutes to speak.  Accordingly, Acosta did have an interest in speaking for three minutes.

14       "Once it is determined that due process applies, the question remains what process is due.

15   It has been said so often by this Court and others as not to require citation of authority that due

16   process is flexible and calls for such procedural protections as the particular situation demands."

17   *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593 (1972).  Although the exact contours of

18   the process required before cutting off a speaker at a city council meeting may be difficult to

19   define, it seems clear that, minimally, Mansoor was required to comply with the very municipal

20   regulations he relied upon in silencing Acosta.  As indicated above, there is a triable issue of fact

21   as to whether he did so.

22       Accordingly, he is not entitled to Summary Judgment on this claim.  Likewise, the City is

23   not entitled to Summary Judgment because Mansoor acted as a policymaker at the time of the

24   events in question.

25       Chief Hensley and the officer defendants, however, are entitled to Summary Judgment.

26   As discussed above, reasonable officers in their position could have believed that Mansoor was

27   privileged to silence Acosta.  Consequently, they are entitled to qualified immunity, even though

28   a triable issue exists as to whether Mansoor violated Acosta's federal constitutional rights.

1    On Acosta's state-law due process claim, the Court previously ruled that the officer

2    defendants are immune.  Further, as discussed with respect to his state free-speech claim

3    Mansoor and Hensley are immune under Government Code § 820.2 because they acted as

4    policymakers.  Thus, the City is also immune.

5    Accordingly, Summary Judgment is hereby DENIED on Acosta's Federal Due Process

6    claim against Mansoor and the City, GRANTED on Acosta's Federal Due Process claim against

7    all other defendants, and GRANTED on his state law due process claim against all defendants.

8    **G.      Claim under California Civil Code § 52.1**

9    California Civil Code § 52.1 provides a claim where,

10         a person or persons, whether or not acting under color of law,

11         interferes by threats, intimidation, or coercion, or attempts to

12         interfere by threats, intimidation, or coercion, with the exercise or

13         enjoyment by any individual or individuals of rights secured by the

14         Constitution or laws of the United States, or of the rights secured by

15         the Constitution or laws of this state.

16   Use of law enforcement can constitute "threats, intimidation, or coercion." *Cole v. Doe 1 thru 2*,

17   387 F. Supp. 2d 1084, 1103 (2005) (unlawful search and seizure by officers violates Section

18   52.1).  However, the Court has already concluded that Mansoor and the City are immune from

19   suit under this provision.  As indicated above, the officer defendants acted reasonably in

20   arresting Acosta.  Accordingly, they cannot be liable for interfering with Acosta's rights.

21   Accordingly, Summary Judgment is hereby GRANTED on Acosta's claim under Section

22   52.1.

23   **H.      Claim under California Civil Code § 51.7**

24   California Civil Code § 51.7 (a) provides that "[a]ll persons within the jurisdiction of this

25   state have the right to be free from any violence, or intimidation by threat of violence, committed

26   against their persons or property because of political affiliation," or their status as members of a

27   protected class.  Civil Code § 52 provides a claim for damages to remedy violations of Section

28   51.7 and others.

As noted above, Acosta has failed to submit evidence that he was discriminated against because of his political affiliation or membership in a protected class.

Accordingly, Summary Judgment is hereby GRANTED on his claim under Cal. Civil Code § 51.7.

## I. False Arrest

False arrest is a tort comprised of "'nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.'" *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1123 (1988) (quoting *City of Newport Beach v. Sasse*, 9 Cal. App. 3d 803, 810 (1970)). However because officers had probable cause to arrest Acosta, they were privileged to do so and cannot be liable for false arrest.

Accordingly, Summary Judgment is hereby GRANTED on Acosta's false arrest claim.

## J. Intentional Infliction of Emotional Distress

A cause of action for intentional infliction of emotional distress requires the plaintiff to plead and prove: 1) extreme and outrageous conduct by the defendant, 2) plaintiff's severe or extreme emotional distress; and 3) actual and proximate causation. *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 579, 593 (1979). Defendant's conduct must be unprivileged to constitute extreme and outrageous conduct. *Id.* (holding that where evidence shows that officers knew that plaintiff committed no offense when they arrested him, plaintiff was entitled to trial on intentional infliction of emotional distress claim) (citations omitted). Here, however, officers had probable cause to arrest Acosta, and so were privileged to do so.

Accordingly, Summary Judgment is hereby GRANTED on Acosta's claim for intentional infliction of emotional distress.

## K. Battery

Under California law, a police officer only commits battery if he uses unreasonable force. As the California Court of Appeal summarized in *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269:

> A police officer in California may use reasonable force to make an
> arrest, prevent escape or overcome resistance, and need not desist in

1                 the face of resistance.  The standard jury instruction in police battery

2                 actions recognizes this: "A peace officer who uses unreasonable or

3                 excessive force in making a lawful arrest or detention commits a

4                 battery upon the person being arrested or detained as to such

5                 excessive force."  By definition then, a *prima facie* battery is not

6                 established unless and until plaintiff proves unreasonable force was

7                 used.

8 *Id.* at 1272-73 (internal citations and footnote omitted).  Again, because the police officers used

9 reasonable force in arresting Acosta, they cannot be liable for battery.

10       Accordingly, Summary Judgment is hereby GRANTED on Acosta's claim for battery.

11       **L.**     **Negligence**

12       As indicated above, the officers acted reasonably in arresting Acosta.  Accordingly, they

13 could not have been negligent in doing so.  Further, as indicated above, Mansoor and Hensley

14 are entitled to discretionary immunity for their decision to silence and remove Acosta.  Thus,

15 they cannot be liable for negligence.  Finally, because all of the individual defendants are

16 entitled to Summary Judgment, the City is also so entitled.

17 **IV.**     **DISPOSITION**

18       Summary Judgment is hereby DENIED on Acosta's First Amendment claim against

19 Mansoor and the City, but GRANTED on that claim against all other Defendnats.

20       Summary Judgment is hereby GRANTED on Acosta's state law free speech claim against

21 all Defendants.

22       Summary Judgment is hereby DENIED as to Acosta's claim for declaratory relief.

23       Summary Judgment is hereby GRANTED as to Acosta's Fourth Amendment claim.

24       Summary Judgment is hereby DENIED on Acosta's Federal Due Process claim against

25 Mansoor and the City, GRANTED on his Federal Due Process claim against all other

26 Defendants, and GRANTED on his state law due process claims.

27       Summary Judgment is hereby GRANTED on Acosta's claim under California Civil Code

28 § 52.1.

1         Summary Judgment is hereby GRANTED on Acosta's claim under California Civil Code

2    §§ 51.7 and 52.

3         Summary Judgment is hereby GRANTED on Acosta's claim for false arrest.

4         Summary Judgment is hereby GRANTED on Acosta's claim for intentional infliction of

5    emotional distress.

6         Summary Judgment is hereby GRANTED on Acosta's claim for battery.

7         Summary Judgment is hereby GRANTED on Acosta's claim for negligence.

8    IT IS SO ORDERED.

9    DATED: December 2, 2008

10

11   _____

12       DAVID O. CARTER
        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28